IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Federico Vargas-Abreu,          :
               Petitioner     :
                      :
        v.                : No. 1094 C.D. 2024
                      : Submitted: June 3, 2025
The Clemens Family Corp. (Workers'   :
Compensation Appeal Board),      :
               Respondent   :

BEFORE:   HONORABLE ANNE E. COVEY, Judge
              HONORABLE LORI A. DUMAS, Judge
              HONORABLE STACY WALLACE, Judge

<u>OPINION NOT REPORTED</u>

MEMORANDUM OPINION
BY JUDGE WALLACE                   FILED: September 9, 2025

      Federico Vargas-Abreu (Claimant) petitions for review of the July 23, 2024 order (Order) of the Workers' Compensation Appeal Board (Board) affirming the Workers' Compensation Judge's (WCJ) July 25, 2023 decision (Decision) granting Claimant's Claim Petition for a limited duration and denying the Clemens Family Corporation's (Employer) Petition to Terminate (Termination Petition). After review, we affirm.

## Background and Procedural History

      In September 2017, Claimant started working for Employer in its meat processing plant. Certified Record (C.R.) at 165.[1] On February 19, 2021, Claimant

---

[1] References to page numbers in the certified record reflect electronic pagination.

slipped and fell on ice in Employer's parking lot sustaining a head contusion (head injury). *Id.* at 177. On July 8, 2021, Employer issued a medical-only Notice of Compensation Payable (NCP), which accepted liability for the head injury. *Id.* at 19. On March 10, 2022, Claimant filed a Claim Petition alleging that on December 1, 2021, he sustained injuries to his back, left arm, head, and shoulder with radiating pain from repetitive work activities that were aggravated by continuing work (back injury). *Id.* Claimant sought temporary total disability (TTD) benefits as of December 2, 2021, along with payment of medical benefits and counsel fees. *Id.* On March 14, 2022, Employer issued a Notice of Compensation Denial (NCD) for the back injury. *Id.* Additionally, on July 6, 2022, Employer filed its Termination Petition relating to the head injury, asserting Claimant was fully recovered as of June 17, 2022. *Id.* The WCJ consolidated the parties' disputes and held hearings. *Id.*

In support of his Claim Petition, Claimant testified on his own behalf and submitted the deposition testimony of Angelo DiCarlo, D.C. (Dr. DiCarlo), the report of Robert W. Mauthe, M.D. (Dr. Mauthe), and records from Employer's in-house medical clinic. C.R. at 19-24. In response and in support of its Termination Petition, Employer submitted the testimony of Amir Fayyazi, M.D. (Dr. Fayyazi). *Id.* at 24-26

Claimant provided the following relevant testimony. Claimant testified that he worked various positions for Employer, which required him to throw large pieces of meat between 70 and 80 pounds into a grinder, load and unload 40-pound boxes onto pallets, manually pull pallets, and cut and process meat. *Id*. at 170-71. He indicated his job duties required that he bend, lift, and twist all day. *Id.* at 171. Claimant testified he first started having problems with his back in 2021, but he also claimed he first complained about his back pain to his supervisor in 2020. *Id.* at

2

174-75, 207. Claimant testified Employer sent him to the in-house medical clinic where he received hot patches and pain relievers. *Id.* at 175. Despite the reported ongoing back pain, Claimant continued to work full duty. *Id.* at 176.

Claimant explained that on February 19, 2021, a Friday, he sustained the head injury when he slipped and fell on ice in Employer's parking lot, landed on his back, and struck his head. C.R. at 176-77. Claimant stated Employer took him to the emergency room, and he did not return to work that day. *Id.* at 178-79. Claimant returned to work the following Monday. *Id*. at 180. Claimant indicated that upon his return, he had headaches and pain in his back and shoulder, which he reported to Employer. *Id.* at 180-81.

Claimant testified that after the head injury, he sought a medical opinion in June 2021, while in the Dominican Republic, from Dr. Francisco Luciano (Dr. Luciano). C.R. at 184-85. According to Claimant, Dr. Luciano evaluated him and ordered a magnetic resonance imaging (MRI) study. *Id.* at 184-86, 204. Additionally, Claimant indicated Dr. Luciano provided him with a note for Employer conveying Claimant's back injury was work related. *Id*. Claimant testified he continued working full duty until December 1, 2021, when he provided an out of work note from Dr. DiCarlo, a chiropractor at Disston Chiropractic, to Employer. *Id.* at 187-88.

Dr. DiCarlo provided the following relevant testimony. Dr. DiCarlo testified he is licensed to practice chiropractic medicine in Pennsylvania. C.R. at 809. He indicated he first evaluated Claimant on December 1, 2021. *Id.* at 815. According to Dr. DiCarlo, Claimant advised him he slipped and fell and hit his head in a parking lot, and reported he was having back spasms and back pain. *Id.* at 817. Additionally, Dr. DiCarlo testified he reviewed results from Claimant's electromyography test

(EMG) and MRI, which identified lumbar radiculopathy bulging disc and hypertrophic facet disease, a disc herniation, and a disc bulge. *Id.* at 825-30. Regarding treatment, Dr. DiCarlo indicated he started Claimant on a treatment plan of chiropractic manipulation, therapeutic exercises, and electrical stimulation. *Id.* Dr. DiCarlo explained Claimant continued to be treated three times per week and indicated a 20% improvement. *Id.* at 821-22. Further, Dr. DiCarlo stated he referred Claimant to Advanced Spine and Pain Relievus (Relievus) where he received injections and pain medication. *Id.* at 831-32, 834-35. Dr. DiCarlo explained he reviewed the reports from Relievus. *Id.* at 825-34, 843.

Dr. DiCarlo opined, to a reasonable degree of chiropractic certainty, that based on his physical examination of Claimant, Claimant had lumbar sprain and strain, and radiating nerve pain. C.R. at 818. Additionally, when asked whether he had an opinion to within a reasonable degree of chiropractic certainty whether those issues were caused by work, he explained: "Certainly if it happened at work and if he was working with these pains originally, then, yes, it would be coming from work and then the accident made it much worse." *Id*. at 818-19. Additionally, Dr. DiCarlo indicated Claimant's activities at work "worsened [his] condition and [the] slip and fall made things worse . . . because when you're anterior like that for long periods of time the effects of gravity pushing down on the lower back is increased." *Id*. at 838. Dr. DiCarlo testified he did not believe Claimant could work because he could not lift more than 25 pounds, and he had radiating pain and intense discomfort. *Id*. at 819-20. Dr. DiCarlo indicated he prepared a letter dated December 2, 2021, stating Claimant should be off work for three months. *Id*. at 820. Dr. DiCarlo indicated Claimant "shouldn't be lifting and twisting." *Id*. at 839.

4

Dr. Fayyazi provided the following relevant testimony. Dr. Fayyazi is board certified in orthopedic surgery with a subspecialty in spine surgery, and licensed to practice medicine in Pennsylvania. C.R. at 962-63. Dr. Fayyazi completed an Independent Medical Evaluation (IME) of Claimant on June 17, 2022. *Id.* at 966. Notably, Dr. Fayyazi did not examine Claimant for his head injury, indicating that was beyond the scope of his practice; he focused on Claimant's back injury. *Id.* at 410. According to Dr. Fayyazi, Claimant indicated he was injured on February 19, 2021, when he fell and landed on his back and head. *Id.* at 967. Dr. Fayyazi testified that at the time of the evaluation, Claimant complained of low back pain and right leg pain, and denied a history of back pain. *Id.* at 967-68. Dr. Fayyazi performed a physical examination, and reviewed reports of diagnostic studies including Claimant's MRI reports and EMG study. *Id.* at 970-81. Dr. Fayyazi also indicated he reviewed medical records from Claimant's other providers, including Dr. Luciano, Dr. Mauthe, and Disston Chiropractic. *Id.* at 981-83. Dr. Fayyazi opined that based on Claimant's history, he "likely sustained a lumbar sprain and strain," but Dr. Fayyazi was "not convinced [Claimant] had a disc injury." *Id.* at 986. He further opined that, at the time he physically examined Claimant on June 17, 2022, Claimant had recovered from his back injury and Dr. Fayazzi felt Claimant could return to work without restriction as to his back injury. *Id.* However, Dr. Fayazzi noted Claimant also needed to be cleared from his head injury. *Id.* at 985.

After considering the evidence, the WCJ granted Claimant's Claim Petition for the back injury, and ordered Employer to pay TTD benefits from December 2, 2021, to June 17, 2022, the date on which the WCJ determined Claimant was fully recovered. C.R. at 31. Additionally, the WCJ denied Employer's Termination Petition for the head injury. *Id.* While the WCJ found Claimant's testimony credible

5

in part, she did not find Claimant's testimony credible as to ongoing symptoms related to Claimant's back injury. *Id*. Specifically, she based this credibility finding on the fact that Claimant's testimony was contradicted by Dr. Fayyazi's testimony, which the WCJ accepted. Additionally, the WCJ noted her opportunity to observe Claimant's comportment and demeanor while testifying in person. *Id.* Regarding Dr. Fayyazi's testimony, the WCJ credited his opinion that Claimant sustained a back injury but fully recovered as of the date of his IME. *Id*. at 28. As to Dr. DiCarlo's testimony, while the WCJ accepted Dr. DiCarlo's testimony that Claimant sustained a back injury as the result of repetitive trauma, which temporarily disabled Claimant, the WCJ accepted Dr. Fayyazi's opinion regarding the extent and full recovery of Claimant's back injury. *Id*. at 28. In relying on Dr. Fayyazi's opinion, the WCJ noted his board certification in orthopedic surgery with an active surgical practice. *Id*. Moreover, the WCJ indicated Dr. DiCarlo failed to persuasively explain his diagnosis of radiculopathy, given the fact that the EMG identified left-sided radiculopathy while Claimant's symptoms were on the right side. *Id.*

Claimant appealed the WCJ's Decision to the Board, which affirmed by its Order. C.R. at 33, 77. Claimant now appeals to this Court. On appeal, Claimant argues the Board erred by affirming the WCJ's termination of benefits with respect to Claimant's back injury when the WCJ's Decision was not supported by "substantial credible or competent evidence of record." Claimant's Br. at 4. Additionally, Claimant asserts the WCJ's Decision "capriciously ignored the record as a whole."[2] *Id*. at 9.

---

[2] Issues must be properly preserved on appeal in order for this Court to review them, which means issues must be raised in a party's petition for review as well as the Statement of Questions Involved and argument section of one's brief or they may be deemed waived. *Riley v. Workers' Comp. Appeal Bd. (DPW/Norristown State Hosp.)*, 997 A.2d 382, 387-88 (Pa. Cmwlth. 2010). We note **(Footnote continued on next page…)**

## Discussion

In a workers' compensation appeal, we are limited to determining whether the necessary findings of fact are supported by substantial evidence, whether the Board committed an error of law, or whether the Board's decision violates a party's constitutional rights. *See Elberson v. Workers' Comp. Appeal Bd. (Elwyn, Inc.)*, 936 A.2d 1195, 1198 n.2 (Pa. Cmwlth. 2007).

First, Claimant challenges the WCJ's finding that he fully recovered from his back injury, asserting such finding was not supported by substantial evidence. Claimant's Br. at 8, 13. Substantial evidence is such relevant evidence that a

---

that Pennsylvania Rule of Appellate Procedure 2119(a) requires that "[t]he argument shall be divided into as many parts as there are questions to be argued; and shall have at the head of each part-in distinctive type or in type distinctively displayed-the particular point treated therein, followed by such discussion and citation of authorities as are deemed pertinent." Pa.R.A.P. 2119(a). Here, Claimant's Statement of Questions Presented section of his brief identifies the issue on appeal as:

> [w]hether the [Board] erred, failing in its review function, by affirming the Termination of all benefits (from both injury dates?) with respect to Claimant's low back, as of the IME date which Decision was NOT supported by either substantial credible or competent evidence of record – let alone both.

Claimant's Br. at 4. The Argument section of his brief has one heading that reads:

> The WCAB erred, failing in its review function, by affirming the Termination of all benefits (from both injury dates?) with respect to Claimant's low back, as of the IME date which Decisions were NOT supported by either substantial credible or competent evidence of record — let alone both; **and which Decisions capriciously ignored the record as a whole.**

*Id.* at 10 (emphasis added). While the arguments raised in Claimant's Statement of Questions Presented and Argument sections of his brief are not mirror images of one another, we are able to discern that the overall themes of the arguments raised therein are the same. However, insofar as Claimant attempts to argue additional issues in his brief, those issues are waived and will not be addressed.

7

reasonable mind might accept as adequate to support a conclusion. *Republic Steel Corp. v. Workmen's Comp. Appeal Bd. (Shinsky)*, 421 A.2d 1060, 1062 (Pa. 1980). We are mindful that in workers' compensation cases, "the WCJ is the ultimate fact[]finder who must determine credibility and evidentiary weight. In this role, the WCJ freely evaluates the evidence offered and can accept or reject any witness'[s] testimony, in whole or in part, including that of a medical witness." *Davis v. Workers' Comp. Appeal Bd. (City of Phila.)*, 753 A.2d 905, 909 (Pa. Cmwlth. 2000). The relevant inquiry in a substantial evidence analysis is not whether the record contains evidence to support facts other than those made by the WCJ; the pertinent inquiry is whether there is evidence to support the findings actually made. *Hoffmaster v. Workers' Comp. Appeal Bd. (Senco Prods., Inc.)*, 721 A.2d 1152, 1155 (Pa. Cmwlth. 1998).

After reviewing the record in this matter, we conclude the WCJ's factual finding that Claimant recovered from his back injury is supported by substantial evidence in the record. Dr. Fayyazi testified that he made no objective findings during Claimant's IME, which led him to believe Claimant had fully recovered from his back injury. C.R. at 426. Although there is evidence in the record, specifically the testimony of Dr. DiCarlo, that supports findings contrary to the WCJ's finding, it was within the WCJ's province to accept Dr. Fayyazi's testimony as more credible on the issue of recovery and the extent of Claimant's back injury. *Id.* at 28. Because the WCJ's findings are supported by substantial evidence in the record, and we accept the WCJ's credibility determinations, we discern no error by the Board in affirming the WCJ's determination that Claimant was fully recovered from his back injury as of June 17, 2022.

Next, Claimant argues the WCJ's Decision was arbitrary and capricious because the WCJ relied almost entirely on Dr. Fayyazi's testimony. Claimant's Br. at 8. "Review for capricious disregard of material, competent evidence is an appropriate component of appellate consideration in every case in which such question is properly brought before the court." *Leon E. Wintermyer, Inc. v. Workers' Comp. Appeal Bd. (Marlowe)*, 812 A.2d 478, 487 (Pa. 2002). "A capricious disregard of evidence is a deliberate disregard of competent evidence which one of ordinary intelligence could not possibly have avoided in reaching a result." *Fedchem, LLC v. Workers' Comp. Appeal Bd. (Wescoe)*, 221 A.3d 348, 357 (Pa. Cmwlth. 2019) (citations omitted). "Where there is substantial evidence to support an agency's factual findings, and those findings in turn support the conclusions, it should remain a rare instance in which an appellate court would disturb an adjudication based upon capricious disregard." *Leon E. Wintermyer, Inc.*, 812 A.2d at 487 n.14. This Court "may overturn a credibility determination only if it is arbitrary and capricious, so fundamentally dependent on a misapprehension of material facts, or so otherwise flawed, as to render it irrational." *West Penn Allegheny Health Sys., Inc. v. Workers' Comp. Appeal Bd. (Cochenour)*, 251 A.3d 467, 475 (Pa. Cmwlth. 2021) (citation omitted). Capricious disregard of evidence "is a deliberate and baseless disregard of apparently trustworthy evidence." *Dep't of Corr. – SCI Chester v. Faison*, 266 A.3d 714, 736 (Pa. Cmwlth. 2021) (quoting *Williams v. Workers' Comp. Appeal Bd. (USX Corp.-Fairless Works)*, 862 A.2d 137, 144 (Pa. Cmwlth. 2004)).

Here, the WCJ considered Dr. DiCarlo's testimony and Dr. Fayyazi's testimony at length, and provided her reasons for finding Dr. Fayyazi more credible than Dr. DiCarlo to the extent their testimony differed. As to Dr. DiCarlo's opinion

that Claimant could not return to work, the WCJ specifically rejected that opinion, finding Dr. Fayyazi's opinion that Claimant fully recovered more credible. *Id.* Thus, the WCJ acknowledged the conflicting medical testimony, and did not capriciously disregard relevant competent evidence in rendering her Decision.

Additionally, Claimant argues it was legally improper for the WCJ to credit Dr. Fayyazi over Dr. DiCarlo on the basis that Dr. Fayyazi is a board-certified orthopedic spine surgeon while Dr. DiCarlo is a chiropractor. *Id.* However, a WCJ is free to accept or reject the testimony of any witness, including a medical witness, in whole or in part. *Jackson v. Workers' Comp. Appeal Bd. (Boeing)*, 825 A.2d 766, 772 (Pa. Cmwlth. 2003) (citation omitted). Moreover, a WCJ's acceptance of one medical testimony over another does not constitute reversible error. *Id.* Insofar as Claimant seeks to have this Court reweigh the evidence, we decline to do so as the WCJ is the factfinder and has the sole authority to assess credibility, resolve conflicting evidence, and determine the weight given to the evidence. *See Hoffmaster*, 721 A.2d at 1155-56. We discern no capricious disregard of the evidence on the part of the WCJ, and therefore, the Board did not err by affirming the WCJ's Decision.

Finally, Claimant argues the WCJ erred in accepting Dr. Fayyazi's opinions regarding Claimant's back injury because Dr. Fayyazi's testimony was equivocal and incompetent. Claimant's Br. at 8. In cases involving medical testimony, competent evidence means medical testimony that is "unequivocal and positive." *Roeberg Enter., Inc. v. Workmen's Comp. Appeal Bd.*, 400 A.2d 911, 912 (Pa. Cmwlth. 1979). Medical testimony is "unequivocal if the medical expert, after providing a foundation, testifies that in his professional opinion that he believes a certain fact or condition exists." *Campbell v. Workers' Comp. Appeal Bd.*

*(Pittsburgh Post Gazette)*, 954 A.2d 726, 730 (Pa. Cmwlth. 2008). "Medical testimony is equivocal if, after a review of a medical expert's entire testimony, is found to be merely based on probabilities." *Id.*; *see also City of Pittsburgh v. Workers' Comp. Appeal Bd. (Wilson)*, 11 A.3d 1071, 1075 (Pa. Cmwlth. 2011) (equivocality "is determined by reviewing the entire testimony of the medical witness").

Here, our review of Dr. Fayyazi's testimony, in its entirety, reveals an unequivocal, or, in other words, an unquestionable opinion of Claimant's recovery. Dr. Fayyazi performed an IME on Claimant, and reviewed MRI and EMG reports, as well as records from Claimant's other providers. Dr. Fayyazi opined within a reasonable degree of professional certainty that Claimant sustained a lumbar sprain and strain, and had no symptoms associated with a disc injury. C.R. at 497-98, 986. Furthermore, Dr. Fayyazi opined, based on his physical examination of Claimant, that Claimant had fully recovered from the back injury as of the date of his IME. *Id.* at 497-98, 985.

Claimant argues Dr. Fayyazi's testimony was incompetent because he did not have knowledge of the repetitive nature of Claimant's back injury. However, Dr. Fayyazi relied upon information provided, in part, by Claimant, including Claimant's statement that he did not have a prior history of back pain. *Id.* at 968. Moreover, when asked about whether he was aware of the repetitive nature of the back injury, Dr. Fayyazi stated "I was not aware of it, but I don't believe it changes my opinion in any way." *Id.* at 1001. Notably, a medical expert's opinion is not rendered incompetent unless it is solely based on inaccurate or false information. *Casne v. Workers' Comp. Appeal Bd. (Stat Couriers, Inc.)*, 962 A.2d 14, 16 (Pa. Cmwlth. 2008). We review the opinion of a medical expert as a whole, and even

11

inaccurate information will not render the opinion incompetent unless it is dependent on those inaccuracies. *Id*. In this regard, Dr. Fayyazi's understanding of the work injury did not impact his conclusion that Claimant had fully recovered. The WCJ found Claimant sustained repetitive occupational trauma to his lumbar spine, resulting in TTD based on Dr. DiCarlo's testimony. The WCJ found Claimant had fully recovered based on Dr. Fayyazi's unequivocal opinion that he made no objective findings during Claimant's IME and Claimant had fully recovered from his back injury as of his examination date. Neither Dr. Fayyazi's opinion nor the WCJ's findings were dependent on Dr. Fayyazi's understanding of the repetitive nature of Claimant's back injury. Thus, we decline to deem his opinion incompetent. Because Dr. Fayyazi's testimony was competent and unequivocal, the WCJ did not err in relying on Dr. Fayyazi's medical testimony as substantial support for her finding that Claimant had fully recovered from his back injury as of the date of his IME. Accordingly, the Board did not err in affirming the WCJ's Decision.

## Conclusion

For these reasons, we conclude the Board did not err.[3] The Board correctly concluded the WCJ's decision was supported by substantial, competent evidence,

---

[3] Insofar as Claimant argues the WCJ's decision was not "reasoned" in his brief, *see* Claimant's Br. at 13 ("In summary, the Decisions in this case are not fairly reasoned"), as addressed *supra*, that issue is waived because it is not in Claimant's Questions Presented section or thoroughly addressed in the Argument section of his brief. However, even if we were to address this issue, we would hold Claimant's argument lacks merit. Section 422(a) of the Act provides, in relevant part, that all parties in a workers' compensation case are entitled to "a reasoned decision containing findings of fact and conclusions of law based upon the evidence as a whole which clearly and concisely states and explains the rationale for the decisions so that all can determine why and how a particular result was reached." 77 P.S. § 834. A WCJ's decision is "reasoned" if it "allows for adequate review by the [Board] without further elucidation and if it allows for adequate review by the appellate courts under applicable review standards. A reasoned decision is no more, and no less." *Daniels v. Workers' Comp. Appeal Bd. (Tristate Transp.)*, 828 A.2d 1043, 1052 (Pa. 2003). **(Footnote continued on next page…)**

and the WCJ did not capriciously disregard any evidence. Thus, we affirm the Board's Order.

 

 

                                          _____

                                          STACY WALLACE, Judge

---

Here, the Board noted the WCJ's Decision met the reasoned decision requirement because the WCJ specifically credited the portion of Dr. DiCarlo's testimony which identified Claimant's back injury as "a result of repetitive trauma" and the WCJ specified that Claimant's back injury, which culminated as of December 1, 2021, was limited to a lumbar strain and sprain, which resulted in TTD from December 2, 2021, to June 17, 2022, based on the credible testimony of Dr. Fayyazi. We agree with the Board. The WCJ identified the evidence she accepted, the evidence she rejected, and her reasons therefor. Our appellate review has not been impeded, and we are not in need of further explanation or clarification to reach our decision. Thus, the WCJ's Decision satisfies Section 422(a) of the Act's reasoned decision requirement.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Federico Vargas-Abreu,         :
               Petitioner    :
                          :
       v.               : No. 1094 C.D. 2024
                          :
The Clemens Family Corp. (Workers'  :
Compensation Appeal Board),      :
             Respondent  :

# **O R D E R**

AND NOW, this 9th day of September 2025, the July 23, 2024 order of the Workers' Compensation Appeal Board is **AFFIRMED**.

_____
STACY WALLACE, Judge